UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KRISTIN SAMSEL, | ) | CIVIL ACTION NO. 4:21-CV-00962 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| KILOLO KIJAKAZI,[1] | ) | |
| Defendant | ) | |

MEMORANDUM OPINION

I.   INTRODUCTION

Plaintiff Kristin Samsel, an adult individual who resides within the Middle District of Pennsylvania, seeks judicial review of the final decision of the Acting Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits under Title II of the Social Security Act.[2] Jurisdiction is conferred on this Court pursuant to 42 U.S.C. §405(g).

---

[1] Kilolo Kijakazi is now the Acting Commissioner of Social Security, and she is automatically substituted as the defendant in this action. *See* Fed. R. Civ. P. 25(d) (providing that when a public officer sued in his or her official capacity ceases to hold office while the action is pending, "[t]he officer's successor is automatically substituted as a party"); 42 U.S.C. § 405(g) "Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

[2] In her Complaint, Plaintiff alleges that she was denied "Social Security Disability and Supplemental Security Income Benefits." (Doc. 1, p. 1). However, the ALJ's decision only indicates that Plaintiff applied for "disability and disability insurance benefits" under Title II of the Social Security Act. (Admin. Tr. 16; Doc. 10-2, p. 17). For the purposes of this appeal, I will only review the claim for benefits under Title II because I lack evidence of any application for Supplemental Security Income benefits.

This matter is before me, upon consent of the parties pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. After reviewing the parties' briefs, the Commissioner's final decision, and the relevant portions of the certified administrative transcript, I find the Commissioner's final decision is supported by substantial evidence. Accordingly, the Commissioner's final decision will be AFFIRMED.

## II.    BACKGROUND & PROCEDURAL HISTORY

On April 11, 2019, Plaintiff protectively filed an application for disability insurance benefits under Title II of the Social Security Act. (Admin. Tr. 16; Doc. 10-2, p. 17).  In this application, Plaintiff alleged she became disabled as of April 2, 2018, when she was 41 years old, due to the following conditions: degenerative disc disease, scoliosis, osteoarthritis in her bones, bone spurs, pinched nerves, lumbar radiculopathy, and a disc bulge. (Admin. Tr. 16, 24, 27; Doc. 10-2, pp. 17, 25, 28). Plaintiff alleges that the combination of these conditions affects her ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, complete tasks, put on shoes, shower, wash her legs and back, and dress herself. (Admin. Tr. 24; Doc. 10-2, p. 25). Plaintiff has at least a high school education. (Admin. Tr. 27; Doc. 10-2, p. 28). Before the onset of her impairments, Plaintiff worked as a certified nurse assistant. (Admin. Tr. 39; Doc. 10-2, p. 40).

On June 21, 2019, Plaintiff's application was denied at the initial level of administrative review and it was denied upon reconsideration on September 3, 2019. (Admin. Tr. 16; Doc. 10-2, p. 17). On September 9, 2019, Plaintiff requested an administrative hearing. (*Id.*).

On January 15, 2020, Plaintiff, assisted by her counsel, appeared and testified during a hearing before Administrative Law Judge Therese A. Hardiman (the "ALJ"). (Admin. Tr. 16, 28; Doc. 10-2, pp. 17, 29). Within the five days prior to the hearing, Plaintiff submitted evidence "outlining a need for a rollator with seat, a basket and handbrakes for 1-year duration of use." (Admin. Tr. 16-17; Doc. 10-2, pp. 17-18). However, the ALJ considered but did not admit or exhibit that evidence because Plaintiff failed to comply with the requirements of 20 C.F.R. 409.935(b). (*Id.*). On April 28, 2020, the ALJ issued a decision denying Plaintiff's application for benefits. (Admin. Tr. 28; Doc. 10-2, p. 29). Plaintiff requested review of the ALJ's decision by the Appeals Council of the Office of Disability Adjudication and Review ("Appeals Council"). (Admin. Tr. 1; Doc. 10-2, p. 2).

On March 29, 2021, the Appeals Council denied Plaintiff's request for review. (*Id.*).

On May 27, 2021, Plaintiff initiated this action by filing a Complaint. (Doc. 1). In the Complaint, Plaintiff alleges that the ALJ's decision denying the application is not supported by substantial evidence, and improperly applies the relevant law and

regulations. (Doc. 1, p. 2). Plaintiff does not appeal the ALJ's non-admission of the evidence submitted within five days of the hearing. (*See* Docs. 1, 11). As relief, Plaintiff requests that the Court reverse the Commissioner's decision, award benefits, remand and/or award attorney's fees. (Doc. 1, p. 2).

On October 6, 2021, the Commissioner filed an Answer. (Doc. 9). In the Answer, the Commissioner maintains that the decision holding that Plaintiff is not entitled to disability insurance benefits was made in accordance with the law and regulations and is supported by substantial evidence. (Doc. 9, p. 3). Along with her Answer, the Commissioner filed a certified transcript of the administrative record. (Doc. 10).

Plaintiff's Brief (Doc. 11), the Commissioner's Brief (Doc. 14), and Plaintiff's Reply (Doc. 15) have been filed. This matter is now ripe for decision.

III.   STANDARDS OF REVIEW

A.   SUBSTANTIAL EVIDENCE REVIEW – THE ROLE OF THIS COURT

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but

rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

"In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). The question before this Court, therefore, is not whether Plaintiff is disabled, but whether the Commissioner's finding that Plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination

as to the status of a claim requires the correct application of the law to the facts.");
*see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope
of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court
has plenary review of all legal issues . . . .").

B.    STANDARDS GOVERNING THE ALJ'S APPLICATION OF THE FIVE-STEP
      SEQUENTIAL EVALUATION PROCESS

To receive benefits under the Social Security Act by reason of disability, a
claimant must demonstrate an inability to "engage in any substantial gainful activity
by reason of any medically determinable physical or mental impairment which can
be expected to result in death or which has lasted or can be expected to last for a
continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also*
20 C.F.R. § 404.1505(a).[3] To satisfy this requirement, a claimant must have a severe
physical or mental impairment that makes it impossible to do his or her previous
work or any other substantial gainful activity that exists in the national economy. 42
U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a). To receive benefits under Title II
of the Social Security Act, a claimant must show that he or she contributed to the
insurance program, is under retirement age, and became disabled prior to the date on
which he or she was last insured. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).

---

[3] Throughout this Opinion, I cite to the version of the administrative rulings and
regulations that were in effect on the date the Commissioner's final decision was
issued. In this case, the ALJ's decision, which serves as the final decision of the
Commissioner, was issued on April 28, 2020.

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4).

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a)(1). In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. § 404.1545(a)(2).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. 42 U.S.C. § 423(d)(5); 20 C.F.R. § 404.1512; *Mason*, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at step five to show that jobs exist in

significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. § 404.1512(b)(3); *Mason*, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Id.* at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." *Schaudeck v. Comm'r of Soc. Sec.*, 181 F. 3d 429, 433 (3d Cir. 1999).

IV.   DISCUSSION

A.   THE ALJ'S DECISION DENYING PLAINTIFF'S APPLICATION(S)

In her April 2020 decision, the ALJ found that Plaintiff met the insured status requirement of Title II of the Social Security Act through December 31, 2023. (Admin. Tr. 19; Doc. 10-2, p. 20). Then, Plaintiff's application was evaluated at steps one through five of the sequential evaluation process.

At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity at any point between February 7, 2019, (Plaintiff's alleged onset date) and April 28, 2020 (the date the ALJ decision was issued) ("the relevant period"). (Admin. Tr. 16, 28; Doc. 10-2, pp. 17, 29). At step two, the ALJ found that, during the relevant period, Plaintiff had the following medically determinable severe impairment(s):  degenerative disc and joint disease of the lumbar spine, and right lower extremity lumbar radiculopathy. (Admin. Tr. 19; Doc. 10-2, p. 20). The ALJ also determined Plaintiff had the following non-severe impairments:

> asthma, obstructive sleep apnea (OSA), obesity, dysphagia, thyromegaly, iron deficient anemia, hyperalbuminemia, gastroesophageal reflux disease (GERD), diverticulitis, hemorrhoids, a hiatal hernia, eczema, tingling of the right upper extremity, low back pain, dorsopathy, sacroiliitis, lumbago, malaise/fatigue, disturbance of sleep and shortness of breath (SOB).

(*Id.*). At step three, the ALJ found that, during the relevant period, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Admin. Tr. 22; Doc. 10-2, p. 23).

Between steps three and four, the ALJ assessed Plaintiff's RFC. The ALJ found that, during the relevant period, Plaintiff retained the RFC to:

> perform a narrow range of light treated as sedentary work as defined in 20 C.F.R. § 404.1567(b) with the following limitations. [Plaintiff] is limited to standing and walking to 2 hours during an 8-hour workday, and sitting 6 hours during an 8-hour workday. She is further limited to no more than occasional climbing on stairs and ramps, but may never

climb ladders, ropes, or scaffolds. She is also limited to no more than occasional climbing on stairs and ramps, but may never climb ladders, ropes, or scaffolds. She is also limited to no more than occasional balancing, stooping, kneeling, crouching or crawling. She must avoid concentrated levels of temperature extremes, humidity, vibrations, fumes and hazards, defined as heights and moving machinery.

(Admin. Tr. 23; Doc. 10-2, p. 24).

At step four, the ALJ found that, during the relevant period, Plaintiff could not engage in her past relevant work. (Admin. Tr. 26; Doc. 10-2, p. 27). At step five, the ALJ found that, considering Plaintiff's age, education and work experience, Plaintiff could engage in other work that existed in the national economy. (Admin. Tr. 27; Doc. 10-2, p. 28). To support her conclusion, the ALJ relied on testimony given by a vocational expert during Plaintiff's administrative hearing and cited the following three (3) representative occupations:

Surveillance System Monitor, DOT #379.367-010, which is a sedentary, unskilled position, with a SVP of 2. There are approximately 30,000 jobs in the national economy.

Order Clerk, DOT #209.567-014, which is a sedentary, unskilled position, with a SVP of 2. There are approximately 9,000 jobs in the national economy.

Call Out Operator, DOT #237.367-014, which is a sedentary, unskilled position, with a SVP of 2. There are approximately 11,000 jobs in the national economy.

(Admin. Tr. 28; Doc. 10-2, p. 29).

Plaintiff alleges the following errors in the ALJ's opinion:

1. The ALJ engaged in an improper lay interpretation of the medical evidence and misstated evidence in formulating the Plaintiff's RFC.

2. The ALJ improperly formulated an RFC for the Plaintiff without the benefit of a medical opinion.

3. The appointment of Andrew Saul as a single Commissioner of SSA who is removable only for cause and serves a longer term than that of the President violates the separation of powers. Accordingly, the Decision in this case, by an ALJ and Appeals Council Judges who derived their authority from Mr. Saul, is Constitutionally defective.

(Doc. 11, p. 9). Plaintiff's first and second contentions are identical; they are most accurately construed as challenges to the way the ALJ evaluated, and articulated her evaluation of, evidence in this case. Accordingly, Plaintiff's brief is construed as raising the following issues:

1. Whether substantial evidence supports the ALJ's RFC determination; and

2. Whether the ALJ's Decision is Constitutionally defective.

I will address the issues in turn.

B.    WHETHER SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S RESIDUAL FUNCTIONAL CAPACITY DETERMINATION

When formulating Plaintiff's RFC determination, the ALJ stated:

After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a narrow range of light treated as sedentary work as defined in 20 CFR 404.1567(b) with the following limitations. Claimant is limited to standing and walking to 2 hours during an 8-hour workday, and sitting 6 hours during an 8-hour workday. She is further limited to no more than occasional climbing on stairs and ramps, but may never climb ladders, ropes, or scaffolds. She is also limited to no more than

occasional balancing, stooping, kneeling, crouching or crawling. She must avoid concentrated levels of temperature extremes, humidity, vibrations, fumes and hazards, defined as heights and moving machinery.

In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p. The undersigned also considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c . . . .

The claimant alleges an inability to work as of February 7, 2019, due to degenerative disc disease, scoliosis, osteoarthritis in her bones, bone spurs, pinched nerves, lumbar radiculopathy, and a disc bulge (Exhibits 3E, 13E). She further alleges that her impairments affect her ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs and complete tasks (Exhibit 5E). At the hearing, claimant testified that she needs assistance from her wife with putting on her shoes, showering, washing her legs and back, and dressing. She also testified that she uses a cane to walk inside and outside of her home. Further, she stated that she is limited in what she can lift and carry, explaining that the heaviest thing she picked up for 30 days prior to the hearing, was her cane, wallet and the remote. Moreover, she stated she is only able to sit, or stand for 5-10 minutes before she needs to change position, and can walk less than 100 feet while using her cane, before she has to stop and rest (Hearing Record). Overall, the claimant alleges she has been unable to sustain any type of full time work due to her combination of impairments and alleged level of symptomatology.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

In regards to claimant's physical limitations, the record reflects that she sustained a work related injury on April 2, 2018, and since that time, treated for degenerative disc and joint disease of her lumbar spine, as well as right lower extremity radiculopathy (Exhibits IF/26, 33, 4F/54). While these impairments cause some continued functional limitations, they do not support greater limitations than those set forth in the above finding. To demonstrate, despite the record reflecting that claimant underwent injections, as well as bilateral radio frequency ablations, objective signs and findings on physical examination are not particularly adverse (Exhibits 2F/23, 26, 30, 36, 9F/159). Specifically, while examinations reflect pain with lumbar range of motion, an antalgic gait, as well as positive Ganslen's, Faber, and sacroiliac joint compression and sacral thrust tests bilaterally, they also reflect normal findings. In addition, examination findings fluctuate in noting bilateral paravertebral and facet joint tenderness, and no back spine tenderness, and in findings of positive and negative Patrick's testing. Even so, in general, claimant's examinations reflected normal strength, sensation, and reflexes, as well as no difficulty toe or heel walking, and a normal Babinski sign. Moreover, aside from two examinations, the findings generally noted negative straight leg testing (Exhibits 2F/l l, 4F/56, 5F/7-8, 7F/13, 8F/9, 9F/26, 86, 101, 131, 148, 234).

Consistent with the clinical findings, although the diagnostic testing reveal some abnormal findings, they do not substantiate a finding that claimant would be unable to function as per the above stated residual functional capacity. To illustrate, the April 2018 lumbar x-ray reveals degenerative disc disease of L3-L4, and L4-L5, and the lumbar MRI from the same month, reflects spondylotic changes, with loss of intervertebral disc space height most noted at L3-L4 and L4-L5. It further reflects mild lower lumbar facet arthrosis, and no findings of fracture, listhesis, or any acute disc protrusions (Exhibits IF/26, 28). Additionally, the June 2018 EMG shows right L4 and L5 radiculopathy, and the August 2019 x-ray reflects multilevel degenerative disc disease, with mild retrolisthesis at Ll-L4 (Exhibits IF/33, 9F/112). Taking the forgoing into consideration, a review of the record as a whole does not support greater limitations. Overall, the longitudinal evidence of record does not support the claimant's allegations concerning the intensity, persistence, and limiting effects of her symptoms. Physically, while the claimant sustained a work related injury, which resulted in her treating for lumbar impairments with radiculopathy, as discussed above,

physical examinations are not particularly adverse. Specifically, there is no indication of any atrophy, muscle weakness, or sensory loss. Moreover, although claimant started appearing at examinations using a cane to ambulate in September of 2019, there is no indication that it was prescribed by any of claimant's providers. In addition, aside from the injections claimant has received, her treatment has been conservative, and there is no indication that she needs surgery.

Further, when considered in conjunction with the above treatment records, the claimant's allegations regarding her significant limitations in her daily activities are not persuasive (Hearing Record). While the claimant described significant limitations in her daily activities, it is difficult to attribute that degree of limitation to any of the claimant's medical conditions in view of the medical evidence as previously discussed . . . .

Regardless of the forgoing, giving the claimant every benefit of the doubt with respect to her physical impairments, the residual functional capacity above accommodates the claimant's severe impairments by limiting her to sedentary work. The residual functional capacity further adds postural and environmental limitations for her comfort, and guards against any exacerbations. The result is that the record as a whole does not support any greater limitations than those outlined above.

As for medical opinion(s) and prior administrative medical finding(s), the undersigned cannot defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding(s) or medical opinion(s), including those from medical sources. The undersigned has fully considered the medical opinions and prior administrative medical findings as follows:

As it pertains to claimant's physical functioning, the undersigned considered the state agency assessments of Dr. Wyatt S. Beazley Ill, and Dr. Chankun Chung, and found them somewhat persuasive (Exhibits IA, 3A). Doctor's Beazley and Chung opined claimant is capable of light work, with postural and environmental limitations. Although Doctors Beazley and Chung's opinion regarding claimant's ability to lift and carry is generally consistent with, and supported by the longitudinal record, when considering claimant's antalgic gait, MRI and EMG findings, the undersigned gave claimant every benefit of the

doubt and lowered claimant's ability to stand and walk to 2 hours a day, and assessed additional postural limitations. For these reasons, their opinions are somewhat persuasive.

The undersigned considered the opinion of Dr. Matthew Wolcott, and did not find it persuasive (Exhibit 8F). Dr. Wolcott opined claimant could walk 1-2 blocks, but stated he was unable to indicate how long she could sit, stand, or walk during an 8-hour workday, as he has not tested this. He further stated that claimant needs a position, which would allow her to shift at will between sitting, standing, and walking, and that she would need breaks in addition to the normal breaks. He also noted that claimant should use a cane to ambulate, and that she could lift and carry less than 10 pounds frequently, 10-20 pounds rarely, and never anything above 50 pounds. Moreover, he assessed postural limitations, and noted that claimant would miss three days a month due to her impairments. The opinion of Dr. Wolcott is not consistent with, nor supported by, the longitudinal record. Specifically, physical examinations are not particularly adverse, as discussed above. Additionally, the lumbar MRI and EMG do not support the limitations imposed by the doctor, or that she would need to miss three days a month. In that he limits claimant to lifting and carrying weight that falls into the sedentary category, the same is supported by, and consistent with, the record. However, the doctor specifically states he is unable to determine claimant's ability to sit, stand, and walk. Lastly, the doctor does not identify clinical objective signs in support of his opinion, and instead references subjective complaints of pain. For these reasons, the opinion of Dr. Wolcott is not persuasive.

The opinion of Pamela A. Morrow PA-C, from February 6, 2019 was considered by the undersigned and is not persuasive (Exhibit 4F/57). PA Morrow states that claimant is unable to work until she has her radio frequency ablation treatment with Dr. Paz. A conclusory statement by a medical source that a claimant is "disabled" or "unable to work", is an issue reserved to the Commissioner (20 CFR 404.1527(d). Further, this opinion provides no functional limitations and offers no signs or laboratory findings to support this conclusory statement. Likewise, it is not clear that the provider understood how impairments are evaluated under the Social Security Act and its regulations. For these reasons, the opinion is not persuasive.

In regards to claimant's physical functioning, the opinions of Dr. Joseph Paz and Susquehanna Valley Medical Specialties from July 30, 2018, September 5, 2018, September 12, 2018, November 9, 2018, and December 21, 2018 were considered by the undersigned, however, as they are from prior to the amended alleged onset date, their persuasiveness was not assessed (Exhibits 2F/16, 4F/25-26, 31, 40, 48). The undersigned notes that these opinions are remote to the current period and pertain a discrete period of time prior to the period being evaluated and not probative of the functional limitations in existing during the time period being adjudicated.

In sum, the above residual functional capacity assessment is supported by the record as a whole, including the claimant's treatment notes, the state agency assessment in part, and the reliable portions of the claimant's statements. Overall, the objective evidence does not support the alleged intensity and persistence of symptoms. Therefore, the undersigned finds that the claimant is capable of performing work in accordance with the residual functional capacity described above.

(Admin. Tr. 23-26; Doc. 10-2, pp. 24-27).

Plaintiff alleges:

The ALJ formulated an RFC for the Plaintiff without the benefit of a medical opinion and improperly disregarded the opinions of Dr. Wolcott. The only medical opinions related to the Plaintiff's RFC were from Dr. Wolcott and the state agency physicians. The only medical provider to actually examine the Plaintiff and render an opinion was Dr. Wolcott. The ALJ found Dr. Wolcott's opinions not persuasive and the opinions of the state agency physicians somewhat persuasive. (R. 25-26) . . . .

As stated above, the ALJ improperly interpreted medical evidence and misstated evidence to reach conclusions concerning the Plaintiff's RFC. She also made a decision concerning the Plaintiff's RFC without the assistance of a medical professional. In fact, the best source of information, Dr. Wolcott, was found not persuasive. If the ALJ had properly considered his opinions, the Plaintiff would have been found disabled. Instead, the ALJ disregarded these opinions.

(Doc. 11, pp. 15-16). Plaintiff also alleges:

> The ALJ improperly engaged in lay interpretation of the medical evidence and misstated evidence in coming to this conclusion . . . .

> [H]ow does the ALJ know examinations which reflect pain with lumbar range of motion, an antalgic gait, as well as positive Ganslen's, Faber, and sacroiliac joint compression and sacral thrust tests bilaterally would not lead to the pain the Plaintiff alleges? Likewise, how does a lack of atrophy, muscle weakness, or sensory loss support the ALJ's conclusion the Plaintiff's pain is not that bad? The ALJ expressly rejected the limitations submitted by Dr. Wolcott since they were allegedly inconsistent with medical records reasoning the physical examinations were "not particularly adverse" and the lumbar MRI and EMG "do not support the limitations imposed by the doctor." The ALJ's statements are all medical conclusions . . . .

> The ALJ made numerous speculative inferences from the medical records to minimize the Plaintiff's complaints to pain. The ALJ's lay interpretation of the medical evidence was improper and must be vacated.

> In addition, the ALJ misstated evidence in the record to reach her erroneous conclusion. The ALJ first asserts the medical records only show positive straight raising on two (2) occasions. (R. 24). In fact, the medical evidence shows positive straight leg raising tests on 5 occasions. (R. 267, 271, 280, 285, and 545). The ALJ also claims there is no indication the Plaintiff needs surgery. (R. 25). This is incorrect as Dr. Haak indicated she needed to lose weight in order for low back surgery to be feasible. (R. 545) . . . .

> At best, the ALJ has only cited portions of the record which supports her decision to disregard the severity of the Plaintiff's symptoms. Where the evaluator mentions only isolated facts that militate against the finding of disability and ignores much other evidence that points another way, amounts to a "cherry-picking" of the record which the courts will not abide. *See Dyer v. Colvin*, 2015 WL 3953135 (M.D. Pa. June 29, 2015); *see also Pike v. Colvin*, 2015 WL 1280484 (W.D. NY March 20, 2015).

The ALJ erroneously discounted the Plaintiff's complaints of pain. She misstated evidence to support her conclusion and made inferences from the medical records which are based on her lay opinions. Finally, she cherry-picked portions of the record to support her incorrect conclusions. For these reasons, the Unfavorable Decision of the ALJ must be vacated and this matter remanded for proper evaluation of the evidence . . . .

(Doc. 11, pp. 10-15).

In response, the Commissioner argues:

Contrary to Plaintiff's argument, the ALJ evaluated her symptoms in accordance with the two-step process set forth in the regulations at 20 C.F.R. § 404.1529 and considered the relevant factors in evaluating the intensity, persistence, and limiting effects of her symptoms, as provided by SSR 16-3p. Plaintiff's argument is simply a request for this Court to substitute its judgment for that of the ALJ, something that is strictly prohibited under the highly deferential substantial evidence standard of review. *See Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011) (explaining that reviewing courts "are not permitted to reweigh the evidence or impose their own factual determinations.").

SSR 16-3p reiterates that the two-step process set forth in 20 C.F.R. § 404.1529 should be used to evaluate impairment-related symptoms alleged by a claimant. 2016 WL 1119029 at **2-8. Here, the ALJ followed the two-step process. After carefully considering the evidence of record, the ALJ found that Plaintiff had medically determinable impairments that could reasonably produce her alleged symptoms (Tr. 24). However, the alleged intensity, persistence, and limiting effects of Plaintiff's symptoms were not entirely consistent with the medical evidence and other evidence in the record (Tr. 24). In reaching this conclusion, the ALJ thoroughly considered Plaintiff's subjective complaints, the objective medical evidence, Plaintiff's treatment course, the effectiveness of her treatment modalities, and statements made by Plaintiff and her physicians (Tr. 23-26). Further, the ALJ adopted many of Plaintiff's subjective complaints by limiting Plaintiff to a very narrow range of light work, treated as sedentary work, with numerous restrictions (Tr. 23-26). For example, The ALJ

acknowledged the credible symptoms of Plaintiff's pain associated with her degenerative disc and joint disease and lower extremity lumbar radiculopathy, and restricted her to a range of light work treated as sedentary that allowed her to stand and walk for no more than two hours a day, and that included numerous postural and environmental limitations to aid her comfort and minimize exacerbations of her pain (Tr. 23).

Plaintiff contends the ALJ improperly relied on her lay speculation to decide the case (Pl.'s Br. at 14), but this argument fails. The ALJ did precisely what she was tasked to do as the fact-finder – she independently formulated Plaintiff's RFC based on all the relevant evidence. *See* 20 C.F.R. § 404.1546(c) (the ALJ is responsible for assessing the claimant's RFC); § 404.1545(a)(3) (RFC is based on "all of the relevant medical and other evidence"); *Pintal v. Comm'r of Soc. Sec.,* 602 F. App'x 84, 87 (3d Cir. 2015) ("To the extent he suggests that the ALJ was obligated to obtain a medical opinion that decides the ultimate question, *Pintal* is wrong."); *Titterington v. Barnhart,* 174 F. App'x 6, 11 (3d Cir. 2006) ("[s]urveying the medical evidence to craft an RFC is part of an ALJ's duties").

Plaintiff also argues that the ALJ misstated evidence by noting that Plaintiff exhibited positive straight-leg raising test results on two occasions (Pl.'s Br. at 13, citing Tr. 24). This argument, too, must fail. The additional dates cited by Plaintiff were prior to the start of the relevant period in February 2019 (Pl.'s Br. at 14). Plaintiff also asserts that the ALJ mistakenly found that Plaintiff's condition did not require surgery (Tr. 545). This was not a misstatement of the evidence. Dr. Haak discussed Plaintiff's options and noted that "there is not something we can do surgically" for whole spine pain (Tr. 545). As for her worst condition in her low back, he opined that Plaintiff's high BMI would preclude success, but if she lost weight, there could be a 65% chance of success (Tr. 545).

In a similar fashion, Plaintiff points to various treatment records she claims support her subjective complaints (Pl.'s Br. at 14). This, too, is an attempt to re-weigh the evidence. Indeed, the ALJ considered many of these facts in evaluating the evidence, including Plaintiff's treatment, diagnostic testing, and examination findings (Tr. 23-26). To the extent Plaintiff asserts that the ALJ should have explicitly discussed

other records, and argues that any failure to do so was due to the ALJ "cherry picking" evidence, Plaintiff's argument must fail. The ALJ evaluated the record and found inconsistencies that led her, overall, to credit Plaintiff's allegations in part but not in their entirety, which is typical evidence weighing, not cherry picking.

In short, in light of the above, substantial evidence supports the ALJ's determination that Plaintiff did not have disabling limitations. Remand for reconsideration of Plaintiff's subjective complaints is unnecessary . . . .

Plaintiff asserts the ALJ's decision is flawed because the ALJ did not rely on a medical opinion in reaching the RFC assessment (Pl. Br. at 15). This argument is without merit. Plaintiff relies on *Doak v. Heckler*, 790 F.2d 26 (3d Cir. 1986) in arguing the ALJ's RFC finding lacked supporting medical evidence (Pl. Br. at 15). However, the Court in *Cleinow v. Berryhill*, 311 F. Supp. 3d 683, 685 (E.D. Pa. 2018) held *Doak* did not stand for the proposition that an ALJ cannot make an RFC determination in the absence of a medical opinion reaching the same conclusion, as such a rule would be inconsistent with the Third Circuit's holding that the ALJ must make the ultimate disability and RFC determinations. The Court in *Cleinow* determined "an ALJ is not restricted to adopting the conclusions of a medical opinion in making an RFC." *Cleinow*, 311 F. Supp. 3d at 685.

In *Chandler*, 667 F.3d at 361-62, this Court held the ALJ (not a treating or other physician) is responsible for crafting the RFC—an administrative finding—and may do so without a medical opinion supporting each specific finding. In other words, the RFC need not be based on any particular medical opinion. "Nothing in the Social Security Act or governing regulations requires the ALJ to obtain matching 'opinion' evidence in order to fashion a claimant's RFC." *Myers v. Berryhill*, 373 F. Supp. 3d 528, 538 (M.D. Pa. Jan 31, 2019) (quoting *Mays v. Barnhart*, 78 F. App'x 808, 813 (3d Cir. 2003)). Indeed, "[t]here is no legal requirement that a physician [must] have made the particular findings that an ALJ adopts in the course of determining an RFC." *Myers*, 373 F. Supp. 3d at 538 (quoting *Titterington*, 174 F. App'x at 11. Thus, "the ALJ need not rely on any single medical opinion in formulating the RFC." *Budman v. Colvin*, No. 13-1034, 2014 WL 1653104, at *9 (M.D. Pa. Apr. 24, 2014) (citations

omitted). *See also Vargas v. Berryhill*, Case No. 16-2003, 2018 WL 1938312, at *8-9 (M.D. Pa. Mar. 13, 2018) ("In executing his administrative fact-finding duty, an ALJ does not reach a decision based on 'improper lay opinion regarding medical evidence' for lack of matching expert opinion evidence"); *Butler v. Colvin*, No. 15-1923, 2016 WL 2756268, at *13 n.6 (M.D. Pa. May 12, 2016) (rejecting the argument that a medical opinion is required to craft an RFC); *Hornyak v. Colvin*, No. 15-00074-E, 2016 WL 1255288, at *1 n.1 (W.D. Pa. Mar. 30, 2016) ("*Doak* does not prohibit an ALJ from making a certain RFC assessment just because no doctor has specifically made the same findings.") (quoting *Titterington*, 174 F. App'x at 11). The ALJ's evaluation of the evidence without a matching opinion from a medical source did not constitute the ALJ improperly relying on her own lay opinion, as Plaintiff's argument suggests (Pl.'s Br. at 14-16).

Following the regulations set forth at 20 C.F.R. § 404.1520c, which apply to claims such as Plaintiff's, filed on or after March 27, 2017, the ALJ properly found that Dr. Wolcott's opinion was not persuasive because it was inconsistent with and unsupported by the longitudinal record (Tr. 25-26). Instead, the ALJ determined that the evidence supported that Plaintiff could perform a narrow range of light work treated as sedentary work, with the additional limitations described above (Tr. 23). The ALJ cited the objective medical evidence, which revealed no evidence of atrophy, muscle weakness, or sensory loss, as well as Plaintiff's conservative treatment (Tr. 25).

In similar fashion, the ALJ found that the opinions of the state agency physicians, who opined that Plaintiff could perform a range of light work that allowed standing and walking for up to six hours in an eight-hour day, were somewhat persuasive (Tr. 25). The ALJ noted that the medical record, including objective test results and positive examination findings, supported limitations in standing and walking for no more than two hours in a day, as well as postural and environmental limitations (Tr. 25). To the extent their opinions were supported by the evidence, the ALJ incorporated them into her RFC assessment.

Here, the ALJ correctly applied the regulations in evaluating the medical opinion evidence. The ALJ evaluated Dr. Wolcott's opinion and explained its persuasiveness. Likewise, the ALJ determined that the opinions of the state agency physicians were somewhat persuasive.

(Doc. 14, pp. 31-39).

The Commissioner's regulations define a medical opinion as:

a statement from a medical source about what [a claimant] can still do despite [his or her] impairment(s) and whether [he or she has] one or more impairment-related limitations or restrictions in the following abilities: . . . .

(i)     [The] ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);

(ii)    [The] ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;

(iii)   [The] ability to perform other demands of work, such as seeing, hearing, or using other senses; and

(iv)    [The] ability to adapt to environmental conditions, such as temperature extremes or fumes.

20 C.F.R. § 404.1513(a)(2). A "medical source" is "an individual who is licensed as a healthcare worker by a State and working within the scope of practice permitted under State of Federal Law, or an individual who is certified by a States as a speech-language pathologist or a school psychologist and acting within the scope of practice permitted under State or Federal law." 20 C.F.R. § 404.1502(d).

An ALJ's consideration of competing medical opinions and prior administrative medical findings is guided by the following factors: the extent to which the medical source's opinion is supported by relevant objective medical

evidence and explanations presented by the medical source (supportability); the extent to which the medical source's opinion is consistent with the record as a whole (consistency); length of the treatment relationship between the claimant and the medical source; the frequency of examination; the purpose of the treatment relationship; the extent of the treatment relationship; the examining relationship; the specialization of the medical source and any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1520c(c).

The most important of these factors are the "supportability" of the opinion and the "consistency" of the opinion. 20 C.F.R. § 404.1520c(b)(2); 20 C.F.R. § 416.920c(b)(2). The ALJ will explain how he or she considered the "supportability" and "consistency" of a medical source's opinion. The ALJ may, but is not required to, explain his or her consideration of the other factors unless there are two equally persuasive medical opinions about the same issue that are not exactly the same. 20 C.F.R. § 404.1520c(b)(3).

Unlike prior regulations, under the current regulatory scheme, when considering medical opinions, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a). "In evaluating medical reports, the ALJ is free to choose the medical opinion of one doctor over that of another." *Diaz v. Comm'r of Soc. Sec.*,

577 F.3d 500, 505 (3d Cir. 2009). In evaluating the medical opinion evidence of record, "the ALJ is not only entitled but required to choose between" conflicting medical opinions. *Cotter,* 642 F.2d at 705. "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo*, 383 U.S. at 620. Moreover, "[i]n the process of reviewing the record for substantial evidence, we may not 'weigh the evidence or substitute [our own] conclusions for those of the fact-finder.'" *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Plaintiff argues that the ALJ's RFC assessment is not supported by the medical opinion evidence of record. (Doc. 11, p. 15). My review of the ALJ's opinion confirms that the ALJ gave little weight to all the medical opinions in the record, considering only one "somewhat persuasive," and the rest "not persuasive." (Admin. Tr. 25-26; Doc. 10-2, p. 26-27). Thus, Plaintiff's argument falls within the growing number of cases that require the Court to compare the language offered in two Third Circuit opinions: *Chandler v. Comm'r of Soc. Sec.* 667 F.3d 356 (3d Cir. 2012), and *Doak v. Heckler*, 790 F.2d 26 (3d Cir. 1986)*.*

There is no dispute that it is the ALJ's duty to assess a claimant's RFC. 20 C.F.R. § 404.1546(c). Further, the Commissioner's regulations and Third Circuit caselaw are clear that an ALJ must consider more than just medical opinions when

evaluating a claimant's RFC. 20 C.F.R. § 404.1545(a)(3) ("We will assess your residual functional capacity based on all of the relevant medical and other evidence."); 20 C.F.R. § 404.1512(b) (explaining that "evidence" is "anything you or anyone else submits to us or that we obtain that relates to your claim."); *Burnett*, 220 F.3d at 121 ("In making a residual functional capacity determination, the ALJ must consider all evidence before him."). In Social Security cases, "[r]arely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant." *McKean v. Colvin,* 150 F. Supp.3d 406, 418 (M.D. Pa. 2015).

Here, a review the pertinent facts of the allegedly relevant cases proves beneficial. Notably, in both *McKean* and *Decker*, which remanded the matter to the Commissioner because the RFC was not supported by a medical opinion of record, the ALJ rejected the *only* medical opinion discussed in the decision by the ALJ. *McKean*, 150 F. Supp. 3d at 418; *Decker v. Berryhill*, No. 1:17-cv-00945, 2018 WL 4189662, at *4 (M.D. Pa. June 8, 2018), *report and recommendation adopted by* 2018 WL 4184304 (M.D. Pa. Aug. 31, 2018). In *Doak*, the case upon which both *McKean* and *Decker* rest, the Third Circuit reversed the ALJ's decision because the ALJ determined that the plaintiff was able to perform work at a more strenuous level than *either* medical opinion found. *See Doak v. Heckler*, 790 F.2d 26, 26-29 (3d Cir. 1986).

An RFC assessment is not supported by substantial evidence where an ALJ finds a lesser degree of limitation—meaning a greater degree of ability—than found by any medical professional without citing to another type of evidence that supports the ALJ's RFC determination. *Decker*, 2018 WL 4189662, at *6, *report and recommendation adopted by* 2018 WL 4184304 (M.D. Pa. Aug. 31, 2018) (listing cases). However, where the ALJ finds a more restrictive RFC than medical opinions indicate, the ALJ's RFC determination will not be found unsupported by substantial evidence without additional cause. *See Chandler*, 667 F.3d at 361-63 (declining to remand because the ALJ's RFC determination was more restrictive than suggested by a persuasive medical opinion); *Titterington*, 174 F. App'x at 11 (affirming the ALJ's decision because the ALJ created a more limited RFC than indicated by the medical opinion); *Metzgar v. Colvin*, No. 3:16-cv-1929, 2017 WL 1483328 (M.D. Pa. Mar. 29, 2017) (emphasis in original), *report and recommendation adopted by* 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017) ("[W]hen an ALJ is saying that a claimant can do *more* than the medical source opinion states, courts exercise caution and suggest that only rarely can an ALJ unilaterally impose an RFC on a claimant that is less restrictive than the residual functional capacity found by the medical professional.").

As a preliminary matter, Plaintiff's assertion that the ALJ erred in not valuing the medical opinion of Dr. Wolcott, as an examining physician, as "the best source

of information," is contrary to 20 C.F.R. § 404.1520c(c), which only requires an ALJ to consider the examining relationship between a claimant and a medical source if two or more medical opinions are equally persuasive upon consideration of supportability and consistency. Here, the ALJ did not find two opinions equally persuasive; therefore, the ALJ was not required to discuss or consider the examining relationship between Plaintiff and Dr. Wolcott.

Next, Plaintiff alleges that the ALJ erred by formulating an RFC determination without the benefit of any persuasive medical opinion. However, the ALJ found the medical opinions of state agency specialists Dr. Wyatt S. Beazley, III, and Dr. Chankun Chung to be somewhat persuasive. (Admin. Tr. 25; Doc. 10-2, p. 26). After finding the opinions somewhat persuasive, the ALJ relied on the medical opinions by Dr. Beazley and Dr. Chung but formulated a *more restrictive* RFC determination than suggested by Dr. Beazley and Dr. Chung. (*Id.*). Again, a more restrictive RFC is not found unsupported by substantial evidence merely because it does not comply with a medical opinion in all respects. *See Chandler*, 667 F.3d at 361-63; *Titterington*, 174 F. App'x at 11. Therefore, the ALJ's RFC determination is supported by a medical opinion of record. The allegation of error for lack of support by a medical opinion is rejected.

Plaintiff also alleges that the ALJ engaged in lay interpretation of the medical evidence, asking "how does the ALJ know . . . . the Plaintiff's pain is not that bad?"

First, as explained above, the ALJ relied on the medical opinions of Dr. Beazley and Dr. Chung in determining that Plaintiff's pain—or its limiting effects—do not require a more limited RFC. Second, the ALJ performed a comprehensive summary of the medical and other evidence, spending at least six full pages of the decision reviewing and evaluating the evidence. (Admin. Tr. 19-26; Doc. 10-2, pp. 20-27). Although Plaintiff alleges that the ALJ erred by "expressly reject[ing] the limitations submitted by Dr. Wolcott since they were allegedly inconsistent with medical records," (Doc. 11, p. 13), the ALJ in fact performed a thorough evaluation of the persuasiveness of Dr. Wolcott's medical opinion, noting that "Dr. Wolcott . . . was unable to indicate how long [Plaintiff] could sit, stand, or walk during an 8-hour workday," and that Dr. Wolcott did "not identify clinical objective signs in support of his opinion." (Admin. Tr. 26; Doc. 10-2, p. 27; *see also* Admin. Tr. 434-438; Doc. 10-7, pp. 209-11). With regard to the only other medical opinion for the relevant time period, the ALJ stated, "[t]his opinion provides no functional limitations and offers no signs or laboratory findings." (Admin. Tr. 26; Doc. 10-2, p. 27). Therefore, I find that the ALJ has clearly relied upon a medical opinion and has not engaged in improper lay interpretation of the medical evidence.

Plaintiff also alleges that the ALJ cherry-picked facts from the medical record to support the ALJ's RFC determination. (Doc. 11, pp. 14-15). Because Plaintiff

fails to cite any specific examples or even evidence disregarded by the ALJ, I will not address this alleged error.

Finally, Plaintiff alleges that the ALJ misstated evidence by asserting that the medical records only show two occasions involving positive straight leg tests and that there is no indication that Plaintiff requires surgery to treat Plaintiff's low back pain and other issues. (Doc. 11, pp. 13-14). With regard to back surgery, Plaintiff implies that surgery is recommended if Plaintiff can lose weight to improve the likelihood of success. (Doc. 11, p. 14 (citing Admin. Tr. 545; Doc. 10-7, p. 318)). However, on the medical record page to which Plaintiff cites, Dr. Haak states: "I explained that there is really not something we can do surgically for [Plaintiff's back pain]. Even in her worst segment, which is the low back, her BMI at this time would be too high to have success." (Admin. Tr. 545; Doc. 10-7, p. 318). It is unclear from this note whether Dr. Haak brought up surgery as a possible recommendation or whether Plaintiff sought Dr. Haak to see if surgery is a choice for Plaintiff. Therefore, I cannot find that the ALJ was wrong in stating that no doctor had recommended surgery for Plaintiff. With regard to the straight leg raise tests, the ALJ is correct that only two tests were positive during Plaintiff's alleged disability period. (*See* Doc. 14, p. 34; *see also* Doc. 11, pp. 13-14).

Each of Plaintiff's allegations of error regarding whether the ALJ's RFC

determination is supported by substantial evidence, therefore, are rejected. The

ALJ's RFC determination is supported by substantial evidence.

C.   WHETHER THE ALJ'S DECISION IS CONSTITUTIONALLY DEFECTIVE

In her brief, Plaintiff alleges Constitutional errors as follows:

> The appointment of Andrew Saul as a single Commissioner of
> SSA who is removable only for cause and serves a longer term than that
> of the President violates separation of powers. Accordingly, the
> Decision in this case, by an ALJ and Appeals Council Judges who
> derived their authority from Mr. Saul, is Constitutionally defective.

> The United States Supreme Court has held that it is
> unconstitutional for an executive agency to be led by a single head who
> serves for a longer term than the President and can only be removed
> from his position for cause. *Seila Law LLC v. CFPB*, 140 S.Ct. 2183
> (Jun. 20, 2020). This constitutionally invalid structure of the CFPB is
> identical to that of the Social Security Administration. The
> Commissioner of SSA is the singular head of the Agency, serves for six
> years, and cannot be removed by the President except for cause
> ("neglect of duty or malfeasance in office"). 42 U.S.C. § 902(a)(3). As
> the Supreme Court specifically held in *Seila Law*, the "insulation from
> removal by an accountable President is enough to render the agency's
> structure unconstitutional." *Seila Law* at 15. For this exact same reason,
> SSA's structure is unconstitutional as it violates separation of powers.

> The government deprived the Plaintiff of a valid administrative
> adjudicatory process. Under 42 U.S.C. § 405(b)(1), only the
> Commissioner of SSA can make findings of fact and issue final
> decisions as to benefits eligibility. See also 42 U.S.C. § 902. The ALJ's
> delegation of authority in this case came from Mr. Saul and is therefore
> constitutionally defective. See HALLEX I-2-0-2(A) (explaining that an
> ALJ's authority to hear and decide a case is delegated from the
> Commissioner of SSA). Similarly, the ALJ decided this case under
> regulations promulgated by Mr. Saul when Mr. Saul had no
> constitutional authority to issue those rules. All of this is just as true

with respect to SSA's Appeals Council judges. Accordingly, a presumptively inaccurate legal standard was utilized to adjudicate this disability claim at the administrative level.

This case should be remanded for a de novo hearing before a new ALJ who does not suffer from the unconstitutional taint of having previously heard and decided this case when the ALJ had no lawful authority to do so. *Lucia v. S.E.C.*, 138 S.Ct. 2044 (2018).

(Doc. 11, pp. 16-17).

In response, the Commissioner argues:

*Plaintiff's Separation of Powers Argument Does Not Entitle Her to a Rehearing of Her Disability Claim.*

Plaintiff argues that SSA's decision denying her disability benefits claim was constitutionally defective because the Social Security Act provision that limits the President's authority to remove the Presidentially-appointed, Senate-confirmed Commissioner of Social Security without good cause, 42 U.S.C. § 902(a)(3), violates the separation of powers. The parties agree that 42 U.S.C. § 902(a)(3) violates the separation of powers to the extent it is construed as limiting the President's authority to remove the Commissioner without cause. *See* Office of Legal Counsel, U.S. Dep't of Justice, Constitutionality of the Commissioner of Social Security's Tenure Protection, 2021 WL 2981542 (July 8, 2021) ("OLC Op."). But without more, that conclusion does not support setting aside an unfavorable SSA disability benefits determination. As the Supreme Court explained this past term in *Collins v. Yellen*, 141 S. Ct. 1761, 1787-89 (2021), even where an unconstitutional statutory removal restriction exists, a plaintiff seeking relief on that basis must show that the restriction actually caused her harm. Plaintiff cannot do so for at least two reasons, further explained below.

First, the ALJ who issued the final decision denying Plaintiff's claim was not appointed by a Commissioner subject to Section 902(a)(3)'s removal restriction. Rather, the ALJ had her appointment ratified by an *Acting* Commissioner of Social Security—whom the President could have removed from that role at will, at any time. As a

factual matter, there is thus no separation-of-powers concern in Plaintiff's case.

Second, even putting aside the circumstances of the ALJ's appointment, Plaintiff must show that Section 902(a)(3)'s removal restriction caused the denial of her benefits claim. She has not made—and cannot make—that showing. Under *Collins,* therefore, she has no entitlement to a new hearing.

A variety of other legal doctrines—harmless error, de facto officer, and the rule of necessity, as well as broad prudential considerations—reinforce the clear takeaway from *Collins* that Plaintiff is not entitled to relief simply because 42 U.S.C. § 902(a)(3) violates the separation of powers.

*Under Collins, Plaintiff Cannot Show the Required Nexus Between Section 902(a)(3)'s Removal Restriction and the Denial of her Benefits Claim.*

In *Collins,* the Supreme Court reviewed a challenge similar to this one, which alleged that the leadership structure of the Federal Housing Finance Agency was unconstitutional because its sole director was removable by the President only for cause. Though the Supreme Court found the removal provision unconstitutional, its discussion of the availability of relief disposes of Plaintiff's constitutional claim here. The Supreme Court explained that even where an unconstitutional statutory removal restriction is present, a plaintiff cannot obtain retrospective relief without showing that the "unconstitutional provision . . . inflict[ed] compensable harm." *See Collins*, 141 S. Ct. at 1789; *see also Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1137 (9th Cir. 2021) ("*Collins* is controlling with respect to the remedy for any unconstitutionality in the removal provisions.").

Like the Director of the FHFA in *Collins,* the Commissioner of Social Security was "properly *appointed*" pursuant to a statute that exhibited "no constitutional defect in the . . . method of appointment[.]" 141 S. Ct. at 1787. The Court emphasized that "the unlawfulness of [a] removal provision"—the alleged constitutional defect both in *Collins* and here—"does not strip [an official] of the power to undertake the other responsibilities of his office." *Id.* at 1788 n. 23. "As a result," the

Court held, "there is no reason to regard *any* of the actions taken" by the agency during this period "as void." *Id.* at 1787 (emphasis added). As Justice Thomas further explained, "identifying some conflict between the Constitution and a statute is not enough. [Plaintiffs] must show that the challenged Government action at issue . . . was, in fact, unlawful." *Id.* at 1790 (Thomas, J., concurring). Without any showing that Section 902(a)(3)'s removal restriction "inflict[ed] compensable harm" on her, *Collins*, 141 S. Ct. at 1789, Plaintiff cannot obtain a rehearing on separation of powers grounds.

*The Deciding ALJ Served Under a Ratification of her Appointment by an Acting Commissioner Not Subject to Tenure Protection, thus Severing any Nexus Between the Removal Restriction and Plaintiff's Alleged Harm.*

Under *Collins,* the absence of a nexus between the purported harm and challenged removal restrictions "defeats the . . . argument for setting aside" agency action. *See id.* at 1787. Where, as here, the underlying basis for a separation-of-powers challenge to a removal restriction is an action taken by an Acting official who was removable at will, no such nexus can even arguably exist. *Id.* at 1782.

The ALJ who adjudicated Plaintiff's claim on April 28, 2020 held office under an appointment legally ratified in July 2018 by then-Acting Commissioner Berryhill. For her part, Ms. Berryhill had been designated to serve as Acting Commissioner in April 2018, upon former President Trump's nomination of Andrew Saul to serve as Commissioner. In her Acting capacity, she enjoyed no statutory tenure protection. *See* 42 U.S.C. § 902(b)(4); *Collins*, 141 S. Ct. at 1783 ("[W]e generally presume that the President holds the power to remove at will executive officers and that a statute must contain "plain language to take [that power] away."); *see also United States v. Eaton*, 169 U.S. 331, 343 (1898) (holding that where a "subordinate officer is charged with the performance of the duty of the superior for a limited time, and under special and temporary conditions, he is not thereby transformed into the superior and permanent official"); *accord Collins*, 141 S. Ct. at 1782 (FHFA Acting Director removable at will because relevant "subsection does not include any removal restriction. Nor does it cross-reference the earlier restriction on the removal of a confirmed Director."). Thus, Ms. Berryhill was removable at will, and her

ratification of the deciding ALJ's appointment accordingly severed any conceivable nexus between Section 902(a)(3)'s tenure protection for a confirmed Commissioner and any alleged harm to Plaintiff.

Lacking any such nexus, Plaintiff cannot receive an SSA rehearing on her benefits claim. *Collins*, 141 S. Ct. at 1787; *see also Decker [Coal Co.]*, 8 F.4th at 1138 ("[T]here is no link between the ALJ's decision awarding benefits and the allegedly unconstitutional removal provisions. And nothing commands us to vacate the decisions below on that ground."); *Boger v. Kijakazi*, No. 1:20-cv-00331, 2021 WL 5023141, at *3 (W.D.N.C. Oct. 28, 2021) (no relief warranted where Plaintiff failed to show a "nexus between the unconstitutional removal restriction and the denial of his application for disability benefits").

*Plaintiff Cannot Show that the Commissioner's Statutory Tenure Protection Affected the Determination of her Claim.*

Even putting aside the circumstances of the ALJ's appointment, Plaintiff's separation of powers claim fails for an additional fundamental reason: she cannot show that the removal restriction "inflict[ed] compensable harm" on her. *Collins*, 141 S. Ct. at 1789. Plaintiff appears to argue that because the ALJ who adjudicated her claim, and/or Appeals Council members who considered her request for review, served under authority delegated from a Commissioner who enjoyed unconstitutional removal protection, the denial of her claim *ipso facto* violates the separation of powers. That is incorrect: unlike Appointments Clause defects, where the presiding official does not enjoy proper authority to occupy the office, *see Lucia v. SEC,* 138 S. Ct. 2044 (2018), agency action is not *per se* invalid simply because it can be traced back to an official subject to an unconstitutional *removal* protection. Rather, under *Collins*, where an agency official is properly appointed, there can be no claim that he "exercise[d] . . . power that [he] did not lawfully possess." *Collins,* 141 S. Ct. at 1788; *see also id.* at 1788 n. 23 ("the unlawfulness of [a] removal provision does not strip [an official] of the power to undertake the other responsibilities of his office"). Thus, "there is no reason to regard *any* of the actions taken" by officials with tenure protection during this period "as void." *Id.* at 1787 (emphasis added); *see also id*. at 1793 (Thomas, J., concurring)

(where officials were properly appointed, there is "no barrier to them exercising power[.]").

   *Collins* teaches, therefore, that actions taken by properly appointed officials are not void. Regardless of the restrictions on removal, the properly appointed Commissioner had full authority to carry out the responsibilities of his office, including promulgating regulations and delegating authority pursuant to the Social Security Act. Plaintiff suggests that actions taken by the Commissioner and those acting under his leadership are void or invalid due to the unconstitutional removal provision, but "*Collins* expressly rejects this view." *Boger,* 2021 WL 5023141, at *3.

   Instead, relief is available in removal challenges only where the alleged injuries are caused by officials subject to the challenged removal restrictions, *and* where those restrictions themselves "inflict[ed] compensable harm" upon plaintiffs. *Collins*, 141 S. Ct. at 1789. Justice Kagan agreed that "plaintiffs alleging a removal violation are entitled to injunctive relief—a rewinding of agency action—only when the President's inability to fire an agency head affected the complained-of decision." *Id.* at 1801 (Kagan, J., concurring). And as Justice Thomas explained in his own *Collins* concurrence, "identifying some conflict between the Constitution and a statute is not enough. [Plaintiffs] must show that the challenged Government action at issue . . . was, in fact, unlawful." *Id.* at 1790 (Thomas, J., concurring). To obtain a rehearing on separation of powers grounds, in other words, Plaintiff must show that Section 902(a)(3)'s removal restriction somehow caused the denial of her benefits claim.

   Plaintiff cannot make that showing here. Were she challenging an action taken by the then-Commissioner, the bar to make the required showing would be high enough: as noted in *Collins*, relief might be warranted had the President sought to remove the challenged official, but been prevented from doing so by a court order. *Id*. at 1789. But the bar is even higher here, where Plaintiff instead asks the Court to set aside an *ALJ's* decision on the basis of the *Commissioner's* tenure protection. And that bar is beyond her reach: she cannot conceivably show how the President's supposed inability to remove the Commissioner without cause might possibly have affected any ALJ's disability benefits decision, much less the decision on Plaintiff's

Page 35 of 45

specific claim. Likewise, Plaintiff cannot conceivably show that the President's supposed inability to remove the Commissioner without cause affected the Appeals Council's denial of review of her specific claim. The infirmity of the Commissioner's removal restriction, in short, "does not mean the adjudication of plaintiff's disability claim was 'infected,' 'tainted,' or decided 'under an unconstitutional delegation of authority.'" *Frank W.*, 2021 WL 5505883, at *4.

Holding Plaintiff to a lower bar would provide her an unwarranted remedial windfall. As Justice Kagan noted in her *Collins* concurrence, "[g]ranting relief" where a plaintiff could not show that the President's inability to remove an agency head actually affected the decision at issue "would, contrary to usual remedial principles, put the plaintiffs 'in a better position' than if no constitutional violation had occurred." *Id.* at 1801 (Kagan, J., concurring). Just so here. Under Plaintiff's theory, she should be awarded a rehearing for no reason other than Section 902(a)(3)'s existence, whether or not she can show that its restriction on the President's ability to remove the Commissioner had any effect on her benefits claim. Awarding her a rehearing where she cannot show that Section 902(a)(3)'s tenure protection affected the denial of her benefits claim would leave her better off than if that provision had never existed in the first place. And as Justice Kagan emphasized, established remedial principles do not permit that sort of outcome. *Id.*

Were it otherwise, moreover, Plaintiff would be far from alone in pursuing the remedial windfall she seeks, as many thousands of other disappointed claimants could receive the same relief. Justice Kagan identified precisely this potential problem in explaining how the Court's holding in *Collins* will guide the remedial analysis in separation of powers challenges going forward: "[c]onsider the hundreds of thousands of decisions that the Social Security Administration (SSA) makes each year . . . . given the majority's remedial analysis, I doubt the mass of SSA decisions—which would not concern the President at all—would need to be undone." *Id.* at 1802 (Kagan, J., concurring). Ultimately, the separation of powers framework—conditioning relief on a plaintiff's ability to show that an unconstitutional removal limitation actually affected the challenged decision—properly "help[s] protect agency decisions that would never have risen to the President's notice." *Id.*

(Doc. 14, pp. 13-25).

In response, Plaintiff argues in her reply brief:

*SSA's Argument the Appointment of the ALJ by an Acting Commissioner Excuses the Constitutional Harms Suffered by the Plaintiff is Unresponsive to the Plaintiff's Argument and Incorrect.*

SSA's first argument is unresponsive to the appellate challenge the Plaintiff has offered. The Plaintiff's argument has nothing to do with who appointed the ALJ or the Appeals Council judges in this case. This appeal is not an Appointments Clause challenge as was true in the cases which led to the Supreme Court's decision in *Carr v. Saul*, 141 S.Ct. 1352 (2021). Rather, the Plaintiff's challenge in the instant case is an entirely distinct one which contests not the adjudicators' appointments, but rather the delegation of authority under which they adjudicated and then decided this case. The Plaintiff had her constitutional rights violated because several government actors, the ALJ and the Appeals Council judges, exercised power that they did not lawfully possess due to a constitutionally defective delegation of power. This constitutional violation has nothing to do with whether those adjudicators had been properly appointed three years ago.

Even if it were conceded that the adjudicators here had been properly appointed, that does not mean that the delegation of authority they received from Commissioner Saul was constitutionally sound. The two issues are not inherently interdependent and, in fact, the Plaintiff does not challenge the adjudicators' appointments. The Plaintiff's point is that the adjudicators here had no constitutionally valid delegation of authority under which to adjudicate and then decide this case. SSA's contention that the ALJ was properly appointed is simply unresponsive to the point at issue. To the extent that SSA maintains that only an Appointments Clause challenge implicates separation of powers and that unconstitutional removal restrictions do not, the Agency's position is flatly contrary to *Collins*. *Collins*, 141 S. Ct. at 1778-89.

Wholly apart from the foregoing, every court which has thus far ruled upon the issue has indicated that even the Acting Commissioner of SSA enjoyed removal protection under the statute for the time period

of their temporary appointment. *See Sylvia v. Kijakazi*, 2021 WL 4692293, at 3 (N.D. Tex. Sep. 13, 2021); *Albert v. Kijakazi*, 2021 3424268, at 3 (D. Alaska Aug. 5, 2021); *Tafoya v. Kijakazi*, 2021 WL 3269640, at 5 (D. Col. Jul. 29, 2021). The Court in *Tafoya* specifically explained:

> Ms. Berryhill's position was temporary, however, does not mean she could be removed at will. In fact, the plain language of the Social Security Act suggests otherwise. It provides "[a]n individual serving in the office of Commissioner may be removed from office only pursuant to a finding by the President of neglect of duty or malfeasance in office." 42 U.S.C.A. § 902(a)(3) (emphasis added). That language is broad enough to encompass an Acting Commissioner.

*Tafoya* at 5.

SSA's first argument is unresponsive and is incorrect.

*Because this Separation of Powers Challenge Involves Government Actors Exercising Power that They Did Not Lawfully Possess, a Showing of "Cause" Is Not Required. Even so, the Plaintiff did Suffer Harm.*

SSA is correct that in *Collins* the majority questioned whether the aggrieved litigants in that case would be entitled to relief. *Collins*, 141 S.Ct. at 1787-89. The Court indicated that harm could not be presumed in that case because *Collins* did not involve a government actor's exercise of power that the government actor did not lawfully possess. *Id.*, at 1788. By contrast, the instant case does in fact involve government actors exercising power which those government actors did not lawfully possess. Specifically, neither the ALJ nor the Appeals Council here had a lawful delegation of authority under which to adjudicate and decide this disability claim. Given the unlawful exercise of power by government actors in the instant case, the analysis of *Collins* suggests that harm should be presumed for the violation of this claimant's constitutional rights. *Id.*

That harm from the constitutional violation should be presumed here without the need for strict causation is supported by other cases in addition to *Collins*. Although it was decided in the Appointments Clause context, the Third Circuit has held that when structural constitutional claims involving separation of powers are concerned, an individual need not show direct prejudice to their disability claim and instead such harm is presumed. *Cirko v. Comm'r of Soc. Sec.*, 948 F.3d 148, 153-54 (3d Cir. 2020). As in *Cirko*, the challenge here "implicate[s] both individual constitutional rights and the structural imperative of separation of powers." *Id*. at 153; *see also Landry v. Fed. Deposit Ins. Co.*, 204 F.3d 1125, 1131 (D.C. Cir. 2000) (recognizing that structural constitutional violations implicating issues of separation of powers warrant automatic reversal as it would be extremely difficult for an individual who was subject to a structurally unconstitutional scheme to show that the design played a strict causal role). Therefore, as in Cirko, causation and harm must be presumed. As a result, this case should be remanded for a de novo hearing before a new ALJ.

The Supreme Court's decision in *Carr* supports causation and harm being presumed. That case also was also decided in the Appointments Clause context and not with respect to a constitutionally invalid delegation of authority. *Carr*, 141 S.Ct. at 1356. However, the reasoning in *Carr* is compelling. Due to the paramount importance of separation of powers concerns and the difficulty any individual would have in vindicating their constitutional rights in the context of a structural challenge, the Supreme Court held that those aggrieved claimants would be entitled to a new hearing before a new ALJ without any case-specific showing of harm. *Id*., at 1356-62. Based on both *Carr* and *Sims v. Apfel*, 530 U.S. 103 (2000), the remedial nature of SSA's programs along with SSA's informal and non-adversarial structure also militate in favor of a finding that harm to these desperately poor and seriously ill Americans is presumed.

In summary, because the instant separation of powers challenge involves government actors exercising power that they did not lawfully possess, no showing of "cause" is required for the Plaintiff to receive a remedy for the government's violation of his constitutional rights.

Even if a causal connection between the government's violation of the Constitution and the Plaintiff's injuries were required for the

Plaintiff to receive a remedy, the Plaintiff has still satisfied that requirement for several reasons. To begin with, "but for" the unlawful delegation of authority to this ALJ and the Appeals Council judges, those government actors could not have adjudicated and issued the adverse determinations which they did in this case. It is impossible to have a more direct "but for" proof of causation. Without any question whatsoever, had those government actors not been illicitly delegated authority, they would not have been able to adjudicate and decide these cases - an injury independent of any denial of benefits. These government actors were only able to adjudicate and decide these cases based upon their constitutionally unsound delegation of authority from Mr. Saul. Given these facts, any causation requirement has been satisfied.

It is important to understand the nature of the injuries suffered by the Plaintiff which SSA does not accurately portray. The injuries the Plaintiff suffered included not only legally invalid adverse decisions by these government actors but also: 1) the failure to receive a constitutionally valid hearing and adjudication process from the ALJ and 2) the failure to receive a constitutionally valid adjudication process from SSA's Appeals Council. These injuries suffered by the Plaintiff were directly and solely caused by the constitutionally illicit delegations of authority from Mr. Saul and Ms. Berryhill . . . .

(Doc. 15, pp. 1-5).

In summary, Plaintiff argues that the ALJ's decision in this matter is constitutionally defective, and therefore must be remanded for a *de novo* hearing, because the government deprived Plaintiff of a valid administrative adjudicatory process because:

1. The ALJ was not properly appointed because Commissioner Saul, who appointed the ALJ, was not properly appointed, due to 42 U.S.C. §

902(a)(3), and the ALJ lacked authority under a lawful delegation of authority to adjudicate this matter. (Doc. 11, p. 17, Doc. 15, pp. 1-2).

2.  The regulations under which the case was decided were unconstitutionally promulgated because Commissioner Saul, who promulgated the regulations, was not properly appointed, due to 42 U.S.C. § 902(a)(3), and therefore did not have the power to promulgate them. (Doc. 11, p. 17).

3.  Harm need not be shown to obtain remand because the ALJ did not lawfully possess authority to adjudicate this matter. (Doc. 15, pp. 3-4).[4]

There is no dispute that 42 U.S.C. § 902(a)(3) violates the separation of powers by limiting the President's authority to remove the Presidentially-appointed, Senate-confirmed Commissioner of Social Security without good cause. (Doc. 11, p. 17; Doc. 14, pp. 13-14; Doc. 15, pp. 1-2).

Plaintiff's first constitutionality argument is that the ALJ was not properly appointed because Commissioner Saul, who appointed the ALJ, was not properly appointed due to the unconstitutional removal statute. However, "the removal provision does not render the Commissioner's appointment invalid and thus, does not automatically void the ALJ's actions under the Commissioner." *Stamm v.*

---

[4] To the extent that Plaintiff makes further arguments to counter the Commissioner's defenses in the alternate, such as the harmless error doctrine and the de facto doctrine, I need not address them because I find that all of Plaintiff's constitutional arguments fail.

*Kijakazi*, No. 3:20-cv-02273, 2021 WL 6197749, at *6 (M.D. Pa. Dec. 31, 2021)

(citing *Collins*, 141 S. Ct. at 1787-88). Here, despite the constitutionally-invalid

removal provision, Commissioner Saul was properly appointed. A properly-

appointed Commissioner carries all of the authority granted him by law. 42 U.S.C.

§ 902(a)(4)-(7) provides:

> The Commissioner [of Social Security] shall be responsible for the exercise of all powers and the discharge of all duties of the Administration, and shall have authority and control over all personnel and activities thereof . . . . The Commissioner may assign duties, and delegate, or authorize successive redelegations of, authority to act and to render decisions, to such officers and employees of the Administration as the Commissioner may find necessary. Within the limitations of such delegations, redelegations, or assignments, all official acts and decisions of such officers and employees shall have the same force and effect as though performed or rendered by the Commissioner.

42 U.S.C. § 902(a)(4)-(7). Therefore, because Commissioner Saul was properly

appointed, Commissioner Saul had the authority to delegate "duties" and "authority

to act" to the ALJ in this case. Therefore, if the ALJ's authority stemmed from

Commissioner Saul, the ALJ had proper authority to decide his matter.

Additionally, even assuming *arguendo* that the Commissioner's appointment

was invalid due to the removal issue, an ALJ who is appointed by an Acting

Commissioner of Social Security, whom the President could remove at any time, are

properly appointed ALJs. *Stamm*, 2021 WL 6197749, at *6 (citing *Collins*, 141 S.

Ct. at 1781). Here, the ALJ who decided Plaintiff's case held an appointment ratified

by "then-Acting Commissioner Berryhill," who was removable by the President at any time. (Doc. 14, pp. 17-19; *see also id.*, fn. 3). *See Stamm*, 2021 WL 6197749, at *6. Therefore, having been properly appointed and thus having properly-designated authority to adjudicate Social Security claims in accordance with 42 U.S.C. § 902(a)(7), the ALJ who decided Plaintiff's claim lacked neither a proper appointment nor the authority to issue the ALJ's decision. Plaintiff's first argument is rejected.

Plaintiff's second constitutionality argument is that the regulations under which the case was decided were unconstitutionally promulgated by Commissioner Saul because he was not properly appointed, due to 42 U.S.C. § 902(a)(3), and therefore did not have the power to promulgate them. Commissioner Saul was properly appointed such that he had "the authority to carry out the functions of the office." *Collins*, 141 S. Ct. at 1788. Therefore, this inquiry turns on whether promulgating regulations was a function of the office of Commissioner of Social Security. It was. 42 U.S.C. § 902(a)(4)-(5) provides:

> The Commissioner [of Social Security] shall be responsible for the exercise of all powers and the discharge of all duties of the Administration, and shall have authority and control over all personnel and activities thereof. [] The Commissioner may prescribe such rules and regulations as the Commissioner determines necessary or appropriate to carry out the functions of the Administration.

42 U.S.C. § 902(a)(4)-(5). Therefore, Plaintiff's second argument is rejected.

Plaintiff's third constitutionality argument is that harm need not be shown to obtain remand. (Doc. 15, pp. 3-4). Plaintiff argues that this harm should be presumed, as opposed to demonstrated, because the ALJ and Commissioner did not possess the authority to decide Plaintiff's case and promulgate the regulations. (Doc. 15, p. 3). Plaintiff further alleges that *Collins* supports Plaintiff's right to remand without demonstration of harm because "[t]he Court indicated that harm could not be presumed in [*Collins*] because *Collins* did not involve a government actor's exercise of power that the government actor did not lawfully possess." (Doc. 15, p. 3 (citing *Collins*, 141 S. Ct. at 1788)). The same is true in this case. *See also Lewis v. Comm'r of Soc. Sec.*, No. 21-cv-1202, 2022 WL 1136687, at * 17 n.2 (E.D. Pa. Apr. 18, 2022) ("Under *Collins*, a plaintiff raising such a challenge must demonstrate specific harm."). Here, harm cannot be presumed because this case does not involve a government actor's exercise of power that the government actor did not lawfully possess. Therefore, Plaintiff's final constitutionality contention is rejected.

[The next page contains the Conclusion]

V.    CONCLUSION

Accordingly, I find that that Plaintiff's request for remand be denied as follows:

(1)    The final decision of the Commissioner will be AFFIRMED.

(2)    Final judgment will be issued in favor of Kilolo Kijakazi.

(3)    An appropriate Order will be issued.

Date: September 9, 2022                    BY THE COURT

                                          _s/William I. Arbuckle_
                                          William I. Arbuckle
                                          U.S. Magistrate Judge